**Walter and Nancy JACOB**

v.

**UNITED STATES of America,
Appellant.**

**No. 73–1346.**

United States Court of Appeals,
Third Circuit.

Argued Dec. 18, 1973.

Decided March 19, 1974.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, William A. Friedlander and John A. Townsend, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., Herbert J. Stern, U. S. Atty., D. N.J., for appellant.

Albert G. Besser, Hannoch, Weisman, Stern & Besser, Newark, N. J., for appellees.

Before VAN DUSEN, ALDISERT and ROSENN, Circuit Judges.

OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This case is before us on appeal by the Government from a district court judgment in favor of plaintiff-appellee taxpayer, Dr. Jacob,* in a refund suit to recover federal income taxes paid by the taxpayer pursuant to a deficiency assessment for the taxable years 1964–1966. The issue presented by this appeal is whether groceries furnished to the taxpayer by his employer for consumption on the employer's premises constitute "meals" within the meaning of Section 119 of the Internal Revenue Code, 26 U.S.C. § 119, so as to be excludable from the employee's gross income.

The taxpayer is the Executive Director of the Training School Unit of the American Institute for Mental Studies (hereinafter referred to as the "Institute") in Vineland, New Jersey. The

---

* Nancy Jacob, the taxpayer's wife, is a party to this case solely because of the joint return provision of 26 U.S.C. § 6013.

Institute is a home for approximately 300 mentally retarded individuals whose ages range from early childhood to over 60 years old. As Executive Director of the Institute, the taxpayer is primarily responsible for both the administration of the Institute and the content of its rehabilitative and educational programs. In addition to his routine administrative duties, the taxpayer has a number of special responsibilities which demand a great deal of his time. He must serve as a "father figure" to most of the students who reside at the Institute, particularly those who have no parents, and must be available at all times to provide counsel and guidance to his students. Also, in the absence of parents and relatives, the taxpayer is solely responsible for making all decisions which would otherwise require parental consent, such as major medical decisions, and he must handle all emergencies which arise at the Institute.

In light of the heavy personal demands upon the Executive Director, the Institute requires, as a condition of employment, that the taxpayer reside on the premises of the Institute and be available on a 24-hour-a-day basis.[1] Therefore, in the taxable years in question, the taxpayer and his family resided on the premises of the Institute in a house provided by the Institute. In addition to the house, the Institute provided the taxpayer and his family with free groceries (including certain nonfood items such as napkins, soap, etc.) from the Institute's commissary.

Upon audit of Dr. Jacob's federal income tax returns for the taxable years 1964–1966, the Commissioner of Internal Revenue determined, *inter alia*,[2] that the cost value of the groceries provided by the Institute to the taxpayer without charge was includible in the taxpayer's gross income and that the groceries were not excludable as "meals" provided the taxpayer within the coverage of section 119. The taxpayer thereupon paid the deficiency in taxes resulting from this determination, filed a claim for refund, and, upon denial of the claim, filed the instant suit for refund in the district court. The district court held that the cost of the groceries was excludable from the taxpayer's gross income. The Government has appealed from that decision.

Section 119 of the Internal Revenue Code provides that "there shall be excluded from gross income of an employee the value of any meals . . . furnished to him by his employer for the convenience of the employer . . . if . . . the meals are furnished on the premises of the employer." 26 U.S.C. § 119. Therefore, to be entitled to an exclusion from gross income under § 119, an employee must be (1) furnished meals by the employer (2) for the convenience of the employer (3) on the business premises of the employer.

The Commissioner contends that the furnishing of grocery items in the nature of unprepared foodstuffs does not constitute "meals" within the intendment of § 119. Specifically, the Commissioner contends that the furnishing of groceries does not further the statutory purpose underlying § 119, namely, to enable an employer to obtain the con-

---

1. The district court stated the following in its opinion:

   "A member of the Board of Trustees, Mr. Bernard Shanley, testified, and I accept that Dr. Jacob's job is 24 hours a day, seven days a week; and that unless he lived on or contiguous to the facility, and was therefore available at all times, the Trustees would not be able to keep him. Mr. Shanley gave the following reasons for this condition: Unless the Director were there, the Trustees felt that the children would not get the care and attention they are getting; and, secondly, the Trustees have a grave responsibility for these retarded children, and the Trustees have therefore put the entire responsibility on Dr. Jacob, and he must be on the job at all times in case of a crisis."

   See Document No. 14 in D.N.J. Civil No. 566–71.

2. The Commissioner also determined that the value of the lodging provided taxpayer was includible in his gross income. The district court decided this issue in favor of the taxpayer, and the Government has not pursued this issue in this appeal.

tinuous presence of its employees at the site of employment by offering meals to its employees. Also, the Commissioner argues that the term "meals," as used in § 119, should be given its plain and ordinary meaning and should be construed to apply only to prepared, ready-to-eat portions of food, such as those served in a restaurant. In support of this proposition, the Commissioner cites Tougher v. Commissioner, 51 T.C. 737 (1969), aff'd, 441 F.2d 1148 (9th Cir.), cert. denied, 404 U.S. 856, 92 S.Ct. 103, 30 L. Ed.2d 907 (1971), in which the Tax Court held that an FAA employee, who was required by his employment to live on a remote island in the Pacific Ocean, was not entitled to exclude from gross income the value of groceries purchased from an FAA commissary because such groceries did not constitute "meals" within the meaning of § 119.[3]

After careful consideration, we reject the above contentions and hold that the furnishing of groceries to the taxpayer under the facts of this case, where such groceries were furnished for the convenience of the employer on the premises of the employer and where such groceries were prepared into meals and consumed by the taxpayer on the employer's premises, constitutes meals furnished within the meaning of § 119.

This narrow holding is not inconsistent with the basic purpose of § 119. As stated by the Government in its brief, such purpose "is to allow employees to exclude from income the value to them of meals furnished by the employer primarily for the convenience of the latter. As reflected in the pertinent Treasury Regulations and the Committee Reports, the convenience in question centers on the desire of the employer to have a more continuous presence of the em-

ployee at the job site and to have him be within reach even when eating." [4]

The above statutory purpose is not undermined at all in the instant case by the fact that the taxpayer-employee, rather than the employer, prepared the meals. To illustrate, rather than providing groceries to the taxpayer, the Institute could have furnished prepared meals to the taxpayer in its cafeteria. Assuming that such meals were furnished for the convenience of the Institute, the value of such meals would be excludable from the taxpayer's gross income under § 119. Alternatively, the Institute could have prepared meals out of groceries supplied by its commissary and then served these meals to the taxpayer in the house provided the taxpayer by the Institute. Assuming again that such meals were furnished for the convenience of the Institute, the value of such meals would be excludable from the taxpayer's gross income under § 119.[5] The only difference between the above examples and the situation in the present case is that the Institute was relieved in this case of the intermediate expense and task of preparing the groceries into meals for the taxpayer. Except for this one difference, the end result is the same in each case. The taxpayer eats food provided by the employer on the employer's premises so that the taxpayer is available on a moment's notice during mealtime to carry out the responsibilities of his employment. If such food were not furnished, the taxpayer might leave the employer's premises to eat elsewhere and thus be unavailable during mealtime. We see no logical reason why entitlement to the exclusion contained in § 119 should hinge upon who cooks the meal.

We also reject the reasoning of the *Tougher* case, *supra*, that the term

---

3. The actual mechanics of the attempted exclusion was by a deduction, after the taxpayer had included the amount in income. Although the Tax Court noted that § 119 does not provide for a deduction, it nevertheless decided the case on the ground that groceries do not constitute meals. Despite this holding, we note that the facts in *Tougher*,

involving a small, remote island in the western Pacific Ocean, are far different from the facts of the instant case.

4. See appellant's brief at p. 12.

5. This result follows because the house provided the taxpayer is part of the employer's premises.

"meals" should be given its ordinary meaning of ready-to-eat servings of food and not extended to include groceries where the groceries are supplied by the employer and consumed on the employer's premises. Our position finds support in the so-called "state trooper" cases, in which courts have held that state troopers are entitled to exclude under § 119 the amount of cash allowances for meals taken at roadside restaurants. See United States v. Keeton, 383 F.2d 429 (10th Cir. 1967); United States v. Morelan, 356 F.2d 199 (8th Cir. 1966); United States v. Barrett, 321 F.2d 911 (5th Cir. 1963); Saunders v. Commissioner of Internal Revenue, 215 F.2d 768 (3d Cir. 1954); [6] but see Wilson v. United States, 412 F.2d 694 (1st Cir. 1969). While these cases are not exactly on point,[7] they nevertheless show that courts have focused primarily on the "convenience of the employer" test in determining whether an employee is entitled to an exclusion under § 119 and have construed the term "meals" broadly in order to give effect to the basic purpose and spirit of § 119.[8] We note that the Supreme Court has stated, in Commissioner of Internal Revenue v. Brown, 380 U.S. 563, 570–571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965), that:

> "Unquestionably the courts, in interpreting a statute, have some 'scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results or would thwart the obvious purpose of the statute.' . . . But it is otherwise 'where no such consequence [would] follow and where . . . it appears to be consonant with the purposes of the Act.' "

In holding that the furnishing of groceries to the taxpayer in the instant case constitutes meals for the purposes of § 119, we emphasize that we are not confronted with a factual situation in which the groceries were furnished to an employee who then prepared the groceries into meals off the business premises. Our holding is confined to the facts of this case.

Since we have concluded that the furnishing of groceries constitutes "meals" for the purposes of § 119 in this case, we now consider whether the two other criteria of § 119 were also satisfied.

The second criterion of § 119 is that meals be furnished "for the convenience of the employer." The issue of whether or not the meals are for the convenience of the employer is "primarily one of fact to be resolved by consideration of all the circumstances." William I. Olkjer, 32 T.C. 464, 468 (1959). Treasury Regulation § 1.119–1(a), which pertains to meals, provides examples of the sorts of factual circumstances which fall within the "convenience of the employer" rule, one of which is the following: "If the employee is required to occupy living quarters on the business premises of his employer as a condition of his employ-

---

6. *Saunders, supra,* involved facts arising prior to 1954 when § 119 was added to the Internal Revenue Code, but the reasoning of *Saunders* was followed in the above-cited post-1954 cases.

7. In the "state trooper" cases, the courts have focused principally on the meaning of the provision in Treasury Regulation § 1.-119–1(c)(2) that "the exclusion provided by section 119 applies only to meals and lodging furnished in kind by an employer to his employee." Despite this "in-kind" language, the courts have held that cash allowances for meals are excludable from the state troopers' income. The Commissioner argues that this "in-kind" language nevertheless precludes a conclusion in the instant case that groceries can constitute meals. We disagree. If the furnishing of cash allowances is properly excludable under § 119, then the furnishing of groceries, under the facts of this case, should be excludable also.

8. In *Saunders, supra,* this court stated, in considering the principles which had evolved prior to the enactment of § 119, that "the rationale of the rule should make it applicable to determine the extent of gross income either when . . . meals are furnished in kind or cash is paid in lieu thereof." 215 F.2d at 771. The court also stated that the convenience of the employer was the key criterion in determining whether the cash allowances were excludable. *Id.* at 772.

ment . . ., the exclusion applies to the value of any meal furnished without charge to the employee on such premises." From this provision, it follows that the taxpayer, who is required to live on the business premises, is entitled to exclude from gross income the value of meals furnished free of charge which he eats in the house provided by the employer.

Further Treasury Regulation § 1.-119–1(a)(2) provides generally that:

"(i) Meals furnished by an employer without charge to the employee will be regarded as furnished for the convenience of the employer if such meals are furnished for a substantial noncompensatory business reason of the employer. If an employer furnishes meals as a means of providing additional compensation to his employee (and not for a substantial noncompensatory business reason of the employer), the meals so furnished will not be regarded as furnished for the convenience of the employer. Conversely, if the employer furnishes meals to his employee for a substantial noncompensatory business reason, the meals so furnished will be regarded as furnished for the convenience of the employer, even though such meals are also furnished for a compensatory reason . . . ."

On the question of whether the taxpayer's meals were furnished "for a substantial noncompensatory business reason," the regulation gives the following example:

"(ii)(a) Meals will be regarded as furnished for a substantial noncompensatory business reason of the employer when the meals are furnished to the employee during his working hours to have the employee available for emergency call during his meal period. In order to demonstrate that meals are furnished to the employee to have the employee available for emergency call during the meal period, it must be shown that emergencies have actually occurred, or can reasonably be expected to occur, in the employer's business, which have resulted, or will result, in the employer calling on the employee to perform his job during his meal period."

The above-cited example fits the factual circumstances of the record in the instant case. The taxpayer's meals were furnished in order that he would be available for emergency calls at the Institute during his meal period and such emergencies did in fact occur from time to time.

The final criterion of § 119, that meals be furnished on the business premises of the employer, was also complied with in the instant case since the house provided the taxpayer is part of the premises of the employer.[9]

■ The Commissioner's final contention [10] is that, even if the furnishing of groceries is held to constitute meals, the value of non-foodstuff, such as napkins, toilet tissue, and soap, provided the taxpayer is not excludable under § 119. We disagree. The district court found that the value of the lodging furnished the taxpayer was excludable under § 119, and the non-foodstuffs are an integral part of either the lodging or the meals. The Government has made no contention with respect to a non-food item which is not an integral part of lodging or meals.

For the foregoing reasons, the judgment of the district court will be affirmed.

ROSENN, Circuit Judge (concurring and dissenting).

9. We reiterate that we do not decide whether this criterion would be satisfied in a factual situation where the groceries were furnished to the employee on the employer's premises, but not prepared into meals or consumed on such premises.

10. At oral argument, the Government stated that it was withdrawing from the appeal the issue of whether the value of the groceries consumed by the taxpayer's family was excludable from gross income under § 119. This matter is presently under review by the Internal Revenue Service.

I respectfully dissent as to all items which the majority deem deductible as "meals."

Section 61(a) of the Internal Revenue Code of 1954 provides that "[e]xcept as otherwise provided in this subtitle, gross income means all income from whatever source derived. . . ."[1]

It is an established rule that exemptions from the broad definition of income in § 61 must be construed narrowly. Commissioner of Internal Revenue v. Jacobson, 336 U.S. 28, 49, 69 S.Ct. 358, 93 L.Ed. 477 (1949); United States v. Stewart, 311 U.S. 60, 71, 61 S.Ct. 102, 85 L.Ed. 40 (1940); Wilson v. United States, 412 F.2d 694, 696 (1st Cir. 1969); Estate of Walling v. Commissioner of Internal Revenue, 373 F.2d 190, 193 (3d Cir. 1967). It is also clear that words of the tax statute will be given their common and ordinary meaning in preference to a strained or distorted construction. Malat v. Riddell, 383 U.S. 569, 571, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966); Commissioner of Internal Revenue v. Brown, 380 U.S. 563, 570, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965); Hanover Bank v. Commissioner of Internal Revenue, 369 U.S. 672, 687, 82 S.Ct. 1080, 8 L.Ed.2d 187 (1962).

With these principles in mind, we must interpret § 119 of the Code, which excludes from the gross income of an employee "any meals . . . furnished to him by his employer for the convenience of the employer, but only if . . . the meals are furnished on the business premises of the employer." The majority, by its construction of the term "meals" to include groceries, expands the scope of the exclusion beyond the clear language of the statute.

As noted by the majority, the § 119 exemption from income is directed at the situation where the employer desires "to have a more continuous presence of the employee at the job site and to have him within reach even when eating." As is indicated by the statutory term "meals", Congress had in mind situations where the employer would provide prepared meals to employees on its premises in order that the employees would be available for emergencies which might arise during the meal hour. As recognized in Tougher v. Commissioner, 51 T.C. 737 (1969), aff'd 441 F.2d 1148 (9th Cir.), cert. denied, 404 U.S. 856, 92 S.Ct. 103, 30 L.Ed.2d 907 (1971), the only case which has considered this issue,[2]

> The word "meals" connotes . . . food that is prepared for consumption at such recognized occasions as breakfast, lunch, dinner, or supper, or the equivalent thereof. It does not ordinarily mean a bag of potatoes, a tin of coffee, a box of salt, a can of peas, 10 pounds of flour, a package of rice, a bottle of ketchup, a jar of mayonnaise, or an uncooked chicken.

51 T.C. at 745.

---

1. Treas.Reg. § 1.61–2, Compensation for services, including fees, commissions, and similar items, provides in part:

    (d) Compensation paid other than in cash

      \*     \*     \*     \*     \*

    (3) Meals and living quarters. The value of living quarters or meals which an employee receives in addition to his salary constitutes gross income unless they are furnished for the convenience of the employer and meet the conditions specified in section 119 and the regulations thereunder.

2. Tougher was decided adversely to the taxpayer. The majority in this case notes that "the facts in Tougher, involving a small, remote island in the western Pacific Ocean, are far different from the facts of the instant case." I do not understand why the particular facts of a case determine whether the term "meals" is to be construed to include groceries. In any event, the facts of the instant case present a far less favorable case for the taxpayer than do the facts in Tougher. Unlike the situation in Tougher, the ready availability of supermarkets in the instant case would make it possible for the employer to require that the taxpayer purchase his own groceries off the premises. There is thus less reason in the instant case than in Tougher to hold that the employer furnished groceries for its own convenience, rather than for the benefit of the employee taxpayer.

Had Congress intended that groceries be excluded from income under § 119, it could easily have chosen the broader word "food" rather than the more limiting word "meals" in that section. At first blush, it would appear that this distinction is insignificant and pedantic. Pragmatically, however, the distinction is significant and real. Were the term to be expanded by interpretation to include food generally as is suggested by the majority, new horizons could be opened for granting non-taxable income to the many thousands of employees in federal, state, municipal and private institutions. Therefore, I believe Congress used the term "meals" literally.

I do not, however, rest solely upon the use of the limiting word "meals" in § 119. I believe in addition that the requirement that meals be furnished "for the convenience of the employer" strongly militates against the exemption granted to the taxpayer by the majority in this case.

The taxpayer received an unlimited draw of free groceries for himself and his family from the employer's commissary. In addition, he could place meat orders with the manager of the commissary, who would in turn place the orders with the Institute's butcher without charge to the taxpayer. Concededly, the taxpayer's job required that he generally eat the meals prepared from these groceries in his house on the premises. However, he rather than the Institute, had control over the *time, duration, value,* and *content* of the meals, and he could adjust these factors to suit his *own* convenience. On the other hand, in the typical case where an employer serves prepared meals to employees to have them on the premises during the meal hour, these factors are entirely within the control of the employer and can be adjusted to meet the *employer's* own convenience. Supplying groceries, therefore, is inherently not for the convenience of the employer, at least not to the same extent as is supplying prepared meals. *See Tougher, supra,* 51 T.C. at 745–746.

The majority apparently considers these factors unimportant in light of the overriding benefit which the employer receives by having the employee on the premises while he eats meals prepared from the groceries supplied to him without charge. I believe, however, that even if the term "meals" includes groceries, the benefit to the employer from having the employee on the premises while he eats may not be taken into account in determining the convenience to the employer from supplying the groceries. The employer is supplying groceries, not prepared meals. The convenience to the employer, therefore, cannot be measured by the convenience to the employer of having the employee eat prepared meals on the premises instead of permitting him to leave during the meal hour. Rather, the convenience to the employer of supplying groceries must be measured solely by the advantage, if any, that the employer receives by having the employee on the premises during the time that he might otherwise take to purchase *groceries* off the premises.

The unusual situation might arise in which an employer could not even permit an employee to periodically leave the premises for a short period of time in order to purchase groceries, or in which there were simply no sources of food in an isolated area except for that supplied by the employer. In such a case, I might find that even groceries were furnished for the convenience of the employer.

The instant case, however, clearly does not present such a situation. The taxpayer testified at trial that he occasionally took trips away from the Institute for purposes such as fund raising, and he stated that he might typically attend a convention which lasted up to a week. There is no indication whatever in the record that the taxpayer was *literally* confined to the employer's premises every minute of every day. Furthermore, the Institute was in the center of town, convenient to several grocery stores, and it would not have taken inordinately

long to purchase a week's supply of food. In any event, it was stipulated at trial that the taxpayer's duties would not have been affected if his wife went to a grocery store to purchase food, instead of the family receiving free food delivered from the Institute commissary.

Under these circumstances, I do not believe that the groceries at issue in this case were furnished for the convenience of the employer.

I do not consider persuasive the majority's reliance upon Treas.Reg. § 1.-119–1(a), which states in part that

> If the employee is required to occupy living quarters on the business premises of his employer as a condition of his employment . . ., the exclusion applies to the value of any meal furnished without charge to the employee on such premises.

My first objection to the majority's reliance upon this provision of the regulation is that even if the statutory term "meals" is construed to include groceries, the regulations issued pursuant to that section clearly contemplated that "meals" only included prepared meals.[3]

I do not believe that it is proper to assume that whenever the term "meals" occurs in the regulations, the term should be broadly construed as "food." The majority's reliance upon the present regulations would require that groceries be deemed supplied for the convenience of the employer in *every* situation where prepared meals are presently deemed to be for the convenience of the employer.

Second, even if the majority is correct in relying on the present regulations, I believe that when the quoted provision is considered in context it merely means that although normally "meals" must be provided during the working hours of an employee, an exception to this rule is made for employees who live in employer-provided lodging.[4] The regulation thus indicates that if groceries consumed by the taxpayer during his normal working hours would be deemed to be supplied for the convenience of the employer, the same would be true of groceries consumed during other hours of the day or other days of the week. I do not believe the provision helps, however, in determining whether *any* of the

---

3. Treas.Reg. § 1.119–1(d) contains examples of the application of Section 119. Of the relevant examples, some refer to the arguably ambiguous term "meals", while the rest refer specifically to meals furnished in a cafeteria.

Particularly instructive is Example (7) which states:

> A construction worker is employed at a construction project at a remote job site in Alaska. Due to the inaccessibility of facilities for the employees who are working at the job site to obtain *food* and lodging and the prevailing weather conditions, the employer is required to furnish *meals* and lodging to the employee at the camp site in order to carry on the construction project. The employee is required to pay $40 a week for the meals and lodging. The weekly charge of $40 is not, as such, part of the compensation includible in the gross income of the employee, and under paragraphs (a) and (b) of this section the value of the *meals* and lodging is excludable from his gross income. [Emphasis supplied.]

The example indicates that *meals* are furnished for the convenience of the employer

in this situation, even though the employees are otherwise unable to supply their own *food*. This indicates that a distinction is indeed being made between the words "food" and "meals", and that "meals" is intended to be restricted to prepared meals.

4. Treas.Reg. § 1.119–1(a)(2)(i) provides in part:

> Generally, meals furnished before or after the working hours of the employee will not be regarded as furnished for the convenience of the employer, but see subdivision (ii)(d) and (f) of this subparagraph [referring to meals furnished immediately before or after the employee's working hours] for some exceptions to this general rule. Meals furnished on nonworking days do not qualify for the exclusion under section 119. If the employee is required to occupy living quarters on the business premises of his employer as a condition of his employment . . . the exclusion applies to the value of any meal furnished without charge to the employee on such premises.

**1302**

groceries here at issue were provided for the convenience of the employer.

For these reasons I would reverse the judgment of the district court and remand for a determination as to which household items (such as soap) are deductible as "lodging."