Morgan P. KOERNER and Juanita B. Koerner, who sue Individually and as class representatives of all members of the West Virginia Department of Public Safety and their spouses, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 2847–HN.

United States District Court, S. D. West Virginia, Huntington Division.

Dec. 17, 1975.

348

Edward V. Lee, Huntington, W. Va., for plaintiffs.

John E. Lutz, Atty., Dept. of Justice, Refund Trial Section No. 2, Washington, D. C., for defendant.

## OPINION

DENNIS R. KNAPP, Chief Judge.

Plaintiffs, Morgan P. Koerner and Juanita B. Koerner,[1] his wife, and the class they represent, bring this action pursuant to 28 U.S.C. § 1346(a)(1), to recover federal income taxes and assessed interest for the years 1967, 1968 and 1969.[2]

This case is presently before this Court on respective motions for summary judgment filed by each of the parties to this action. The main issue to be determined is whether cash subsistence payments paid to Morgan P. Koerner are excludable from his gross income under the provisions of § 119, Internal Revenue Code of 1954, 26 U.S.C. § 119.[3]

Since 1955 Koerner has been a member of the West Virginia Department of Public Safety, commonly known as the State Police and hereinafter referred to as "Department." The Department was created by an act of the West Virginia Legislature during an extraordinary session thereof on March 29, 1919. It was the fourth state police organization to be created in the United States. Today the Department consists of four companies totaling a complement of 391 men under the command of a superintendent. The Department was and is still organized along traditional military concepts. The uniform of the members, military in design, is prescribed and provided for by law and must be worn according to military standards of dress. In addition, the members of the Department are required to observe certain rules of military courtesy, including the execution of a hand salute to the governor of the state, the superintendent of the Department and all commissioned officers thereof.

All members of the Department are subject to duty twenty-four hours a day every day and no member may absent himself from duty except with an authorized leave of absence.

Since its inception the Department members have been concerned with law enforcement duties in the territorial confines of the State of West Virginia, the Department having state-wide jurisdiction by law. These duties include, but are not limited to, the arrest of any and all persons anywhere in the confines of the state charged with a violation of any law of the state or the United States; service of criminal process anywhere within the state; the cooperation with local authorities with detecting crime; highway patrol and accident investigations, which duties are primarily performed outside the cities and towns which are protected by local police departments.

Members of the Department receive a statutorily-fixed salary. W.Va.Code 15–2–3. Subsistence payments are made

---

1. Juanita B. Koerner is a party to this action solely as a result of the filing of joint income tax returns for the years in issue.

2. The original complaint was filed only on behalf of Koerner and his wife, to which the government filed a timely answer. On April 16, 1973, the late Sidney L. Christie, Judge of this Court, entered an order permitting the Koerners to amend the complaint "so as to make this a class action as well as an individual action." Fifteen months after the amended complaint had been filed and served, the government, without having answered, filed a motion to vacate the April 16, 1973 order or, in the alternative, to strike the class action portion of the amended complaint. On September 23, 1975, an order was entered denying the motion in its entirety.

3. There is no doubt that the main issue in dispute is common to and affects all members of the class the Koerners represent.

to members of the Department in compliance with the provisions of Chapter 15, Article 2, Section 9, of the Code of West Virginia, as amended. Subsistence payments, however, are only received by members of the Department for days that a member is actually on duty. The salary and subsistence payments are made to the members of the Department by separate checks at the end of each month. These payments are not considered as income by the state of West Virginia in determining the retirement pay of the members and are not intended to represent additional compensation. During the year 1967 the rate of subsistence paid to a member of the Department was $5.50 per day. For the years 1968 and 1969 the rate was $5.75 per day.

The record shows that initially there were two company headquarters established, each with a barracks and a kitchen-mess which accommodated the officers and men and provided them with food and rations, all as provided by law. As the Department grew in size, members were deployed singly and in groups to various sections of West Virginia to perform the duties imposed upon the Department in which event they were quartered in buildings owned or leased by the state and there fed a common mess as at the two company headquarters, or they were lodged in rooming houses and fed at restaurants or boarding houses with the cost thereof borne directly by the state in lieu of housing, quarters and meals (initially $1.00 per day), or the members were dealt with by any combination of these methods de-

pending upon which method best suited the convenience of the state under the then prevailing circumstances. Today there is at least one detachment permanently located in each of the fifty-five counties of West Virginia. During this period of growth various changes occurred in the furnishing of subsistence to members by the state in addition to the methods above enumerated. In any event, all of these methods evolved into the present practice of the state paying cash directly to all members of the Department in lieu of housing, quarters and rations.

While on duty a member of the Department has a choice of locations where he may eat, but it should not be remote from his assigned area. While the Department has no regulation designating where a member must eat, no member must frequent any place which might reflect unfavorably upon himself or the Department. In addition, before leaving his patrol car a member must report his position to local headquarters so that he might be reached by public communications should he be needed.

■ With regard to the aforestated main issue in this case, the government contends that the cash subsistence payments do not qualify under § 119, Internal Revenue Code of 1954[4] because they neither constitute meals furnished in kind nor meet the requirement that the meals be furnished on the business premises of the employer. (Defendant's brief, p. 5).

These contentions have been answered adversely to the government in the cases

---

4. SEC. 119. MEALS OR LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER.

There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if

(1) in the case of meals, the meals are furnished on the business premises of the employer, or

(2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment.

In determining whether meals or lodging are furnished for the convenience of the employer, the provisions of an employment contract or of a State statute fixing terms of employment shall not be determinative of whether the meals or lodging are intended as compensation.

of *United States v. Barrett,* 321 F.2d 911 (5th Cir. 1963); *United States v. Morelan,* 356 F.2d 199 (8th Cir. 1966); *United States v. Keeton,* 383 F.2d 429 (10th Cir. 1967), all of which cases are not meaningfully distinguishable from the instant case. See also *Smith v. United States,* 75–1 U.S.T.C. par. 9184 (N.D.Miss.1974).

██ With respect to the "in kind" requirement, the Court in *Barrett,*[5] supra, stated that "we cannot agree that the meals furnished must invariably be in kind." It went on to cite the case of *Saunders v. Commissioner,* 215 F.2d 768 (3rd Cir. 1954), wherein that Court stated at p. 771:

". . . [T]he rationale of the rule should make it applicable to determine the extent of gross income either when quarters and meals are furnished in kind or cash is paid in lieu thereof. . . . Admittedly, the payment of cash to an employee is normally compensatory and probably more obviously so than payment in kind. Nevertheless, just as an employee is often furnished tangible property which cannot be regarded as compensation, an employee may be furnished cash which is not compensation. . . ."

The Court in *Jacob v. United States,* 493 F.2d 1294 (3rd Cir. 1974), appears to have approved the holdings in *Barrett, Morelan* and *Keeton.* In *Jacob* the issue was whether groceries furnished to the tax payer constituted "meals" within the meaning of § 119. The Court held in the affirmative notwithstanding the government's argument (which was identical to that advanced here) that "meals" under § 119 mean "prepared ready-to-eat portions of food, such as those served in a restaurant." Id. In rejecting this argument, the Court instead gave the term "meals" a broad interpretation "in order to give effect to the basic purpose and spirit of § 119" as did the courts in *Barrett, Morelan* and *Keeton.* Id.

As to the government's contention that § 119 does not apply in this case because the meals are not furnished on the business premises of the employer, the following is a quotation of a district court's opinion in *Morelan v. United States,* 237 F.Supp. 879, 884 (D.Minn. 1965), aff'd 356 F.2d 199 (8th Cir. 1966):

"The defendant's (Government's) contention that the subsistence allowance is not excludable under § 119 because the meals were not consumed 'on the business premises of the employer,' while theoretically arguable, doesn't make much sense because the 'business premises' of the State of Minnesota extend over all of the State and particularly to the highways of the State where these plaintiffs worked. . . ."

Further, the Court in *Barrett,* supra, stated at page 912:

"The Commissioner takes too narrow a view of what constitutes the 'business premises' of the Mississippi Highway Patrol. The major 'business' of this state law enforcement agency is obviously not confined to isolated station houses; rather, it covers every road and highway in the state twenty-four hours a day every day. In view of the special nature and functions of the highway trooper's work, it is unrealistic to treat the employer's place of business as limited to the state patrol headquarters. This criterion, therefore, is not decisive

5. In its brief, the government politely criticizes the *Barrett* court in relying on *Saunders* to conclude that it was not necessary for meals to be furnished in kind on the ground that *Saunders* was decided prior to § 119 being added to the Internal Revenue Code. The government would therefore distinguish *Saunders* but such would be without a distinction with respect to the reasoning advanced by *Saunders* regarding the "in kind" requirement. See *Jacob v. U. S.,* 493 F.2d 1294, 1297 n. 6 (3rd Cir. 1974).

against the excludability of the sums here in question."

■ This Court firmly believes that the reasoning in these two statements is unassailable. To interpret "business premises" otherwise would lead to absurd results under the facts in this case and the other "state police" cases. See *Commissioner of Internal Revenue v. Brown*, 380 U.S. 563, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965). The government's position based upon *Wilson v. United States*, 412 F.2d 694 (1st Cir. 1969), is illogical and is not supported by the facts in this case.[6] Further, the Court in *Wilson*, supra, made no mention as to the importance, or lack thereof, of determining whether or not the meals are furnished for the convenience of the employer. The convenience of the employer test has been held to be the key criteria in determining whether an employee is entitled to an exclusion under § 119. *Jacob v. United States*, supra, at page 1297. The Court stated in *Barrett*, supra, at page 913:

"[T]he sums in question were in addition to the trooper's fixed statutory compensation. The patrolmen were required to eat meals along their regular routes so that the patrol areas would not be unguarded during mealtime, and they were required to notify their headquarters where they were eating so that they could be reached in case of an emergency. The sums paid the patrolmen so that they could eat at restaurants on their tour of duty were thus primarily for their employer's benefit. . . ."

Moreover, in Treasury Regulations, § 1.119–1[7] it is stated that the "question of whether meals are furnished for the convenience of the employer *is one of fact to be determined by analysis of all the facts and circumstances in each case.*" (Emphasis supplied). The Regulation also states that if it is shown that meals are furnished on the business premises of the employer and that the meals are furnished for the convenience of the employer, the exclusion of payments received shall apply.[8] This Court believes, and so holds, that the record in this case conclusively shows that the meals for which a cash subsistence is paid were furnished on the business premises of the employer at the convenience of the employer.

■ The government also urges that the repeal of § 120 of the Internal Reve-

---

6. The Court is aware of the recent tax court case of *Kowalski v. Commissioner*, CCH Dec. 33,458 (Oct. 1975) wherein the Tax Court (six members dissenting) held under facts similar to those of this case that meal allowance advanced to a New Jersey State trooper were not "meals furnished in kind" under § 119. This case was decided in the jurisdiction of the Third Circuit Court of Appeals, but seems to be in conflict with *Jacob* on the "meals in kind" question. The majority opinion emphasized that *Jacob* was not controlling because of the factual differences between the two cases and that *Saunders* was not controlling because it was decided prior to 1954. However, as a practical matter these "distinguishing features" are meaningless in determining what constitutes "meals in kind."

7. Treasury Regulations on Income Tax (1954 Code) (26 C.F.R.):
§ 1.119–1 *Meals and lodging furnished for the convenience of the employer.*

(a) *Meals—(l) In general.* The value of meals furnished to an employee by his employer shall be excluded from the employee's gross income if two tests are met: (i) The meals are furnished on the business premises of the employer, and (ii) the meals are furnished for the convenience of the employer. The question of whether meals are furnished for the convenience of the employer is one of fact to be determined by analysis of all the facts and circumstances in each case. If the tests described in subdivisions (i) and (ii) of this subparagraph are met, the exclusion shall apply irrespective of whether under an employment contract or a statute fixing the terms of employment such meals are furnished as compensation.

8. In its brief the government does not really attack the plaintiffs' contention that the "convenience of the employer" test is met under the facts of this case.

nue Code,[9] which was contemporaneously enacted with § 119 in 1954, conclusively shows that Congress did not intend that § 119 should apply to cash subsistence payments made to state policemen. This Court cannot agree. Rather it is the belief of this Court that the repeal of § 120 would only preclude a court from holding that cash subsistence payments are, as a matter of law, excluded, but it would not preclude a court from holding that such cash payments would be excluded as a matter of fact. Treasury Regulation 1.119–1(a)(1).

Finally, the government contends that the plaintiff cannot maintain this action with respect to the year 1968 because he failed to comply with the statutory requirement of filing a claim for refund for that year. Section 7422, Internal Revenue Code of 1954, 26 U.S.C. § 7422.[10] The record, however, discloses otherwise. The government admits in its brief that the plaintiff timely filed a joint tax return for the year 1968 in which the subsistence payments received for that year were treated as income. The government further admits that a claim for refund was filed on October 15, 1970. On November 20, 1970, plaintiff was refunded $260.80 which represented the amount of taxes he paid and the interest thereon for the year 1968. The government then states in its brief that "the Commissioner, however, discovered this error [the refund of $260.-80] and on February 14, 1972, the plaintiff was timely assessed $256.96 in taxes

and interest." Four days later plaintiffs satisfied in full this amount. (Defendant's brief, p. 21).

Section 7422 states that no suit may be maintained in any court for the recovery of any internal revenue tax alleged to have been assessed or collected until a claim for refund or credit has been duly filed with the secretary or his delegate. The record firmly establishes that the plaintiff did, in fact, file such a claim for refund prior to the institution of this action. The government readily admits that the commissioner merely made an error when he sent the refund check to the plaintiff on November 20, 1970. From the record in this action, it is apparent that such error was an administrative error and did not constitute acquiescence on the part of the commissioner when the refund for 1968 was made to plaintiff. This conclusion is further supported by the fact that the record shows that at the time the plaintiff filed a claim for refund on October 15, 1970, for the year 1968, he also filed like claims for the years 1967 and 1969, which claims were denied.

This Court would therefore hold that the plaintiff is not precluded from bringing this action with respect to the year 1968.

### ORDER

Accordingly, it is ordered that plaintiffs' motion for summary judgment be and the same is hereby granted and that

---

9. SEC. 120. STATUTORY SUBSISTENCE ALLOWANCE RECEIVED BY POLICE

(A) *General Rule.*—Gross income does not include any amount received as a statutory subsistence allowance by an individual who is employed as a police official by a State, a Territory, or a possession of the United States, by any political subdivision of any of the foregoing, or by the District of Columbia.

(b) Limitations.—

(1) Amounts to which subsection (a) applies shall not exceed $5 per day.

10. SEC. 7422. CIVIL ACTIONS FOR REFUND.

(a) No suit prior to filing claim for refund.—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof.

defendant's like motion be and the same is hereby denied.