T.C. Summary Opinion 2007-53


UNITED STATES TAX COURT



JAMES A. NIELSEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 18883-04S.                Filed April 2, 2007.


James A. Nielsen, pro se.

<u>Michael W. Bitner</u>, for respondent.



ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in

effect at the time that the petition was filed.[1]  Pursuant to

section 7463(b), the decision to be entered is not reviewable by

_____

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 2000
and 2001, the taxable years in issue, and all Rule references are
to the Tax Court Rules of Practice and Procedure.

any other court, and this opinion shall not be treated as precedent for any other case.

This matter is before the Court on respondent's Motion For Summary Judgment, filed December 15, 2006, pursuant to Rule 121. In his motion, respondent moves for a summary adjudication in his favor on the substantive issue presented by this case; namely, whether petitioner is entitled under section 119 to exclude from gross income the value of lodging provided to him by his employer during 2000 and 2001. On February 27, 2007, petitioner filed an Objection to respondent's motion.

For the reasons discussed below, we shall grant respondent's motion.

## Background

### Petitioner's Employment

At all times relevant to this case, petitioner was employed by Raytheon E-Systems, Inc. (Raytheon), an institutional contractor with U.S. Department of Defense (DOD) agencies. Raytheon assigned its employees, including petitioner, to work on specific projects associated with DOD agencies.

During 2000 and 2001, the taxable years in issue, petitioner was assigned by Raytheon to a position at the Joint Defense Facility at Pine Gap/Joint Defense Facility at Nurrungar located

at the United States-Australian Joint Defense Facility at Pine Gap Air Force Base in Australia (Pine Gap or the base).[2]

As a condition of his employment with Raytheon at Pine Gap, petitioner was obliged to accept assigned housing as was required by the U.S. Department of the Air Force (Air Force) for personnel working at the base.

Assigned Housing in Alice Springs

The only housing available to petitioner, as a condition of his employment with Raytheon at Pine Gap, was in Alice Springs, Australia. Alice Springs, a town of approximately 25,000 people, is located in the middle of the Northern Territory of Australia and is surrounded by three deserts. Alice Springs is not within the physical boundaries of the base but is about 22 miles away.

Apart from a prison located 15 miles from Pine Gap, Alice Springs is the closest residential area to the base. Similar to other towns near military installations, the residents of Alice Springs include both individuals who worked at the base and individuals who had no employment affiliation with the base. For those who worked at Pine Gap, transport between Alice Springs and the base was by public bus or privately owned vehicle.

---

[2] "The defense facility was authorized under a treaty between the United States and Australia that became effective on Dec. 9, 1966." Hargrove v. Commissioner, T.C. Memo. 2006-159 n.9.

The assigned housing units in Alice Springs were located in six different sections throughout the town and consisted of condominiums (generally for people without family members) and single-family homes (generally for people with family members). The assigned housing units were not available for private ownership, and they were made available only to individuals working at Pine Gap.

The assigned housing units were not in any separately gated community, and they were located adjacent to housing that was available to the general public. Services such as trash collection, sewage, and utilities were provided by Alice Springs, and the town's police department provided law enforcement services. A private company was responsible for maintenance of the assigned housing units.

The assigned housing unit in which petitioner resided was a condominium. It was located on a street running through a residential neighborhood that was accessible by the general public.

Petitioner did not pay any rent for the assigned housing unit in which he resided.

Petitioner's Income Tax Returns

For the taxable year 2000, petitioner received from Raytheon a Form W-2, Wage and Tax Statement, reporting his wages. Also for 2000, petitioner received from the Air Force a Form 1099-

MISC, Miscellaneous Income, reporting nonemployee compensation of $6,292. The $6,292 represented the value of the lodging furnished to petitioner.[3]

Petitioner filed a Form 1040, U.S. Individual Income Tax Return, for 2000. On his return, petitioner listed his occupation as "computer operator", and he reported his wages as disclosed on his Form W-2 from Raytheon. Petitioner did not, however, include in gross income the value of the lodging furnished to him; rather, he attached to his return the following statement:

> The U.S. Airforce issued a form 1099-Misc to me which is exempt under section 119 of the Internal Revenue Code. The reason that this income is exempt is because the housing has been provided for the convenience of Raytheon and is a condition of employment for me. I am not including the housing 1099-Misc in the amount of $6,292 for this reason.

For the taxable year 2001, petitioner received from Raytheon a Form W-2 reporting his wages. Also for 2001, petitioner received from the Air Force a Form 1099-MISC reporting

---

[3] We note that utilities furnished by an employer to make a lodging habitable for an employee constitute lodging for purposes of sec. 119. Turner v. Commissioner, 68 T.C. 48, 50 (1977); accord Rev. Rul. 68-579, 1968-2 C.B. 61. In the instant case, the record is not perfectly clear whether the $6,292 included utilities. Suffice it to say that respondent does not contend that any amount greater than $6,292 should be included in petitioner's gross income.

nonemployee compensation of $6,380.  The $6,380 represented the value of the lodging furnished to petitioner.[4]

Petitioner filed a Form 1040 for 2001.  On his return, petitioner listed his occupation as "computer operator", and he reported his wages as disclosed on his Form W-2 from Raytheon. Petitioner did not, however, include in gross income the value of the lodging furnished to him; rather, he attached to his return a statement that was substantively identical to the statement that he attached to his 2000 return.[5]

Notice of Deficiency

In the notice of deficiency, respondent determined that petitioner was not entitled to an exclusion under section 119 for the value of the lodging furnished to him and that petitioner

---

[4] See supra note 3.

[5] As previously stated, supra note 2, Pine Gap was authorized under a treaty between the United States and Australia that "generally provides for establishing and operating a facility for general defense research".  Hargrove v. Commissioner, supra at n.10.

> [U]nder the treaty, contractors' income shall be deemed not to have been derived in Australia for Australian tax purposes as long as it is not exempt from and is subject to tax in the United States.  * * * If the lodging income were exempt from U.S. tax, this provision would entitle Australia to tax it instead.

Id.  In the instant case, there is no suggestion whatsoever in the record that petitioner filed Australian tax returns or paid Australian tax on the value of his lodging in Alice Springs.  See Rule 121(d).

must therefore include in his gross income $6,292 and $6,360 for 2000 and 2001, respectively.[6]

Petitioner timely filed a petition with the Court disputing respondent's deficiency determinations. In the petition, petitioner contends that he "does not feel the 1099 income represents taxable income since the housing was for the convenience of his employer and the U.S. govt."

Petitioner listed his mailing address as being in Washington, Missouri, at the time he filed his petition.

Petitioner's Amended Returns

At about the same time that petitioner filed his petition for redetermination with the Court, he submitted to respondent a Form 1040X, Amended U.S. Individual Income Tax Return, for each of the 2 taxable years in issue.

The Form 1040X for 2000 incorporates a Schedule C, Profit or Loss From Business. The Schedule C does not identify any business or profession or any product or service, nor does it list a business name or address. Rather, it simply reports gross income of $6,292; i.e., the value of the lodging furnished to petitioner in 2000 as reported on the Form 1099-MISC issued by

---

[6] The $20 discrepancy between the amount reported by the Air Force on the Form 1099-MISC, Miscellaneous Income, for 2001 ($6,380) and the adjustment in the notice of deficiency for that year ($6,360) appears to be attributable to a typographical error. In view of the fact that the discrepancy is both de minimis and in petitioner's favor, we shall ignore it in ruling on respondent's motion.

the Air Force for that year, and claims as deductions a total of $6,650, consisting of (1) $650 for "utilities" and (2) $6,000 for "operating expenses". The consequent "net loss" of $358; i.e., $6,292 - $6,650, is then set off against petitioner's previously reported income, resulting in a claim for refund of $98.

The Form 1040X for 2001 also incorporates a Schedule C. Again, it does not identify any business or profession or any product or service, nor does it list a business name or address. Rather, it reports gross income of $6,360; i.e., virtually the same value of the lodging furnished to petitioner in 2001 as reported on the Form 1099-MISC issued by the Air Force,[7] and claims as deductions a total of $7,117, consisting of (1) $817 for "utilities" and (2) $6,300 for "operating expenses". The consequent "net loss" of $757; i.e., $6,360 - $7,117, is then set off against petitioner's previously reported income, resulting in a claim for refund of $228.

### Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in

---

[7] Again, there is a $20 discrepancy between the amount reported on the 2001 Form 1099-MISC by the Air Force ($6,380) and the amount reported by petitioner on the Schedule C ($6,360). See supra note 6.

controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."  Rule 121(a) and (b); <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

After reviewing the record, we are satisfied that there is no genuine issue as to any material fact, and a decision may be rendered as a matter of law.  Accordingly, we shall grant respondent's Motion For Summary Judgment.

A.   <u>Section 119 Exclusion</u>

Unless otherwise specifically excluded, gross income includes all income from whatever source derived, including compensation for services.  Sec. 61(a)(1).  Compensation for services includes income realized in any form, including money, property, or services.  Sec. 1.61-2(d)(3), Income Tax Regs. Thus, the value of lodging furnished to an employee by his or her employer is, as a general rule, includable in the employee's gross income.  <u>Id.</u>

However, under an exception to the general rule, the value of lodging furnished to an employee by his or her employer may be excluded from gross income if certain conditions are satisfied. Sec. 119(a).  Thus, to exclude the value of lodging, (1) the

employee must accept the lodging as a condition of employment, (2) the lodging must be furnished for the convenience of the employer, and (3) the lodging must be on the business premises of the employer. Sec. 1.119-1(b), Income Tax Regs. The exception to the general rule will not apply, and the value of the lodging will be included in gross income if the employee fails to satisfy any of these three conditions. Dole v. Commissioner, 43 T.C. 697, 705 (1965), affd. per curiam 351 F.2d 308 (1st Cir. 1965); see Commissioner v. Schleier, 515 U.S. 323, 328 (1995) (holding that exclusions from gross income are construed narrowly).

There is no dispute in this case that a condition of petitioner's employment with Raytheon at Pine Gap was petitioner's acceptance of assigned housing. There is likewise no dispute that such lodging was furnished for the convenience of the employer. At issue is whether the lodging furnished to petitioner in Alice Springs was on the business premises of the employer.

Section 1.119-1(c)(1), Income Tax Regs., defines the term "business premises of the employer" as the place of employment of the employee. The Court has construed the phrase "on the business premises" to mean either: (1) Living quarters that constitute an integral part of the business property, or (2) premises on which the employer carries on some of its business activities. See Dole v. Commissioner, supra at 707 (holding that

employees living in company-owned housing 1 mile from where they worked did not constitute living on the business premises of their employer).

In <u>Hargrove v. Commissioner</u>, T.C. Memo. 2006-159, the Court held that taxpayers who were employed by an American defense contractor at Pine Gap and who were required, as a condition of their employment, to reside in assigned housing in Alice Springs were not entitled to exclude the value of their lodging because such lodging was not on the business premises of the employer.

Although the taxpayers in the <u>Hargrove</u> case were employees of TRW Overseas, Inc. and not Raytheon, we regard that distinction as one without a difference. However, because the "camp" provisions of section 119(c) were not expressly discussed in that case, we shall consider that section.[8]

Section 119(c)(1) provides that if "an individual * * * is furnished lodging in a camp located in a foreign country by or on behalf of his employer, such camp shall be considered to be part

---

[8] We are aware of no case discussing the "camp" provisions of sec. 119(c) other than <u>Johnson v. Commissioner</u>, T.C. Memo. 1983-479 n.3, which case involved taxable years preceding the effective date of sec. 119(c), and <u>Abeyta v. Commissioner</u>, T.C. Summary Opinion 2005-44. In the latter case, the Court held that a software engineer who was employed by an American defense contractor at Pine Gap and who was required, as a condition of his employment, to reside in assigned housing in Alice Springs was not entitled to exclude the value of his lodging because, inter alia, such lodging was not in a camp. But see sec. 7463(b), restricting the treatment of a small tax case as a precedent for any other case.

of the business premises of the employer."  In turn, section

119(c)(2) provides that a "camp" constitutes lodging that is:

> (A) provided by or on behalf of the employer for the convenience of the employer because the place at which such individual renders services is in a remote area where satisfactory housing is not available on the open market,

> (B) located, as near as practicable, in the vicinity of the place at which such individual renders services, and

> (C) furnished in a common area (or enclave) which is not available to the public and which normally accommodates 10 or more employees.

Respondent does not dispute that the requirements of section

119(c)(2)(A) and (B) are satisfied in the instant case.  However,

respondent contends that petitioner's lodging did not constitute

a "camp" within the meaning of section 119(c) because

petitioner's lodging did not satisfy the third requirement of

section 119(c)(2); i.e., that the lodging be "furnished in a

common area (or enclave) which is not available to the public and

which normally accommodates 10 or more employees."  Sec.

119(c)(2)(C).  We agree.

Granted, petitioner's lodging was not available to the

public in that petitioner's specific housing unit was not

available for private ownership and its occupancy was restricted

to personnel who worked at Pine Gap.  However, the lodging was

furnished in a common area that was accessible to the public, as

demonstrated by the fact that the lodging was located within the

same community as housing available to the public.  The assigned housing units were interspersed throughout Alice Springs and were not separated into gated communities.

Section 1.119-1(d)(5), Income Tax Regs., provides that a cluster of housing units does not satisfy section 119(c)(2)(C) if it is adjacent to or surrounded by substantially similar housing available to the general public.  Indeed, a public road accessible to the general public ran through petitioner's neighborhood.  Moreover, we do not regard living in a residential suburb as fitting into the common parlance of the term "camp".

In short, petitioner's lodging was not in a camp within the meaning of section 119(c).

B.  Deduction of Value of Lodging

Petitioner's attempt to deduct the value of lodging furnished to him is unavailing.  First, petitioner did not incur any lodging expense.  Second, even if he did, section 262(a) generally prohibits the deduction of personal, living, or family expenses.  To the extent that section 162(a)(2) may provide a limited exception to this general prohibition, petitioner was not traveling while away from his tax home within the meaning of that section.  See generally United States v. Correll, 389 U.S. 299 (1967); Peurifoy v. Commissioner, 358 U.S. 59 (1958); Commissioner v. Flowers, 326 U.S. 465 (1946).

C. <u>Conclusion</u>

For the reasons discussed above, we hold that the value of the lodging furnished to petitioner in 2000 and 2001 is not excludable from gross income.

Additional arguments advanced by petitioner have been considered but are without merit and warrant no further discussion.

To give effect to the foregoing,

<u>An order granting respondent's motion and decision sustaining the deficiencies will be entered</u>.